Bradford v. Armijo et al., 28 N. M. 288.

[No. 2390. July 28, 1922.]

[Rehearing Denied Dec. 11, 1922.]

## BRADFORD v. ARMIJO

### SYLLABUS BY THE COURT

(1) Section 4246, Code 1915, held to authorize the district court to review the findings of a referee upon proper exceptions thereto, and that such findings are not unassailable, notwithstanding they may be supported by substantial evidence.                                         P. 292

(2) In the absence of objections to the reference of a cause to a referee, consent thereto will be presumed.     P. 293

(3) Section 4246, Code 1915, is also authority for this court to review the findings of the district court upon disputed questions of fact, where the district court has not seen and heard the witnesses.                    P. 293

(4) The evidence in regard to the genealogy of appellant's grantor examined, and held to show that the district court committed error in holding that appellant's grantor had no title.                                    P. 294

(5) A question not presented to the district court will not ordinarily be considered here.                 P. 296

(6) In order to show ouster of one cotenant by another, there must ordinarily be express denial of the title and right to possession of the fellow tenant, brought home to the latter openly and unequivocally.            P. 296

(7) The evidence of actual ouster of appellant's grantor by his cotenant examined, and held to be sufficient to show ouster, and to start the running of the statute of limitations in behalf of the cotenant in posession.            P. 298

(8) The evidence in regard to continuous adverse possession by a cotenant examined, and held to be of the same character as at the time of the ouster of the cotenant from that time to the bringing of this suit.            P. 300

(9) A tax deed issued under the provisions of chapter 62, Laws 1882, the pertinent provisions whereof appear as sections 2892 and 2893, Comp. Laws 1884, and as sections 4100 and 4101, Comp. Laws 1897, is held to be color of title.
                                                      P. 301

(10) The evidence in behalf of appellee in regard to his holding under color of title for the required statutory period of 10 years examined, and held to be insufficient to entitle appellee to claim the title, under section 3364, Code 1915.
                                                      P. 303

(11) The evidence in behalf of appellee as to his holding of the premises in question in adverse possession for the required statutory period examined, and held, that it fails to establish any right in appellee under the provisions of section 3365, Code 1915.                       P. 304

Appeal from District Court, Sandoval County; Reynolds, Judge.

Suit by J. L. Bradford against Policarpio Armijo. From a judgment for defendant, plaintiff appeals. Reversed and remanded, with directions.

See, also, 25 N. M. 456, 184 Pac. 708.

Catron & Catron, of Santa Fe, for appellant.

George S. Downer and W. A. Keleher, both of Albuquerque, for appellee.

### OPINION OF THE COURT

PARKER, J.  On the 20th day of July, 1769, Pedro Fermin de Mendinueta, the Governor and Captain General of the Province of New Mexico granted to Luis Jaramillo the property involved in this litigation, and which is known as the Agua Salada, or Luis Jaramillo land grant.  On August 14th of the same year Antonio Sedillo, the Chief Alcalde of the province of Laguna, in pursuance of the order of the Governor and Captain General, placed the grantee, Luis Jarmillo, in possession of the grant.  On August 23, 1893, this grant was confirmed by the Court of Private Land Claims of the United States.  On November 15, 1909, patent was issued by the United States for the land in question granting the same unto the heirs, legal representatives, and assigns of the said Luis Jaramillo.  On August 18, 1914, plaintiff filed his complaint in the district court of Sandoval county for partition of said premises, alleging that he was the owner in fee simple, as tenant in common, of an undivided one-half interest in and to the tract of land.  The complaint is the ordinary complaint in partition, and contains no unusual features.

The defendant, Policarpio Armijo, answered the complaint, alleging that he was the sole and absolute owner in fee simple of all the premises involved.  He further alleged that for more than 20 years before the com-

mencement of the action he had been in possession of the lands and premises involved, and had had full use and occupancy and possession thereof during all said period, and had been holding and claiming the same by virtue of deeds of conveyance thereof, purporting to convey an estate in fee simple, and that during all of said period of time, in which he had so held the possession and occupancy of said land, neither the plaintiff, nor any person from, through, or under whom the plaintiff claimed, nor any person whomsoever, had made claim to the said lands, and that no suit, either at law or in equity, or otherwise, had been made, begun, or filed by or on behalf of the plaintiff, or his assignors or any person whomsoever claiming or purporting to claim any right, title, or interest in or to the said property, down to the time of the commencement of this action.

The defendant further answered that for more than 20 years prior to the commencement of the action he had been in actual, open, visible, notorious, continuous, and exclusive possession of the premises described in the complaint under claim of right thereto, adverse and hostile to the claims of any and every other person whomsoever, holding and claiming title to said premies under and by virtue of various divers deeds to him conveying, and purporting to convey, full title in fee simple thereto, and that no action, claim, demand, or other legal proceedings had been brought or instituted against him for the recovery of the said land, or any claim or interest therein, during the said whole period of 20 years or more, and that this action was not brought or instituted within 10 years after this defendant came into said possession and after the commencement of his holding in the manner and form above set out. It is to be noted that in neither of these two last defenses does the defendant make any reference to the payment of taxes on the property.

The defendant further answered that he had paid out divers sums of money for taxes, and for the survey of

the grant, and for attorney's fees and expenses in se-
curing the confirmation of the grant. He prayed that
the complaint of the plaintiff be dismissed, and that he
recover costs of the action, or in the alternative, in the
event that it should be finally determined that the
plaintiff had an interest in the premises, that the same
be held to be subject to the lien of the defendant for
such expenditures for the protection and maintenance
of the estate.

The plaintiff replied to this answer, denying the pay-
ment of the taxes, denying information as to the ex-
penditures for taxes and other expenses, and alleging
that, in the event the court should find that defendant
had paid out any sums necessarily and properly ex-
pended, and for the payment of which said defendant
was entitled to be reimbursed, that said amount is
more than offset by the rents and profits of the said
real estate which have been received by the defendant,
and asking for an accounting of such rents and profits,
as well as the sums paid out by the defendant, and that
said rents and profits be set off against any amount
necessarily and properly expended by the defendant.

The case came on for trial before the district court,
and a portion of the testimony for the plaintiff was
heard by the district judge. Thereupon, on February
21, 1917, the court referred the case to a referee in the
following language:

"It is therefore ordered that John Baron Burg be and he
is hereby appointed referee in the above-entitled cause, for
the purpose of taking all proofs that may be necessary, and
find facts and conclusions of law based on the evidence al-
ready taken before the court, and such evidence as such
referee may take, and report all such testimony, findings
of fact, and conclusions of law to the court at as early a date
as possible."

The order makes no statement as to whether the
reference was with the consent of the parties, or was
upon the court's own motion; but no objection appears
in the record by either party to the reference, and they
both proceeded to introduce their proofs before the

referee without objection,  The proofs having been taken before the referee, on February 27, 1918, he filed his report, in which he made findings of fact and conclusions of law, in which he found that the plaintiff was entitled to an undivided one-third interest in the property as tenant in common.

Exceptions to the report were filed by the defendant, involving nearly all of the findings.  The report and the exceptions thereto came on for hearing before the court, and all of the exceptions of the defendant were sustained by the court, and the report of the referee was set aside in toto.  The district court thereupon took up the case upon the proofs taken, both before himself and the referee and the court found that the plaintiff had acquired no interest in the premises involved, and that the defendant was seized of a fee-simple title in and to the whole of the land grant.  The case before us is upon appeal from this judgment.

[1]  The first proposition presented by appellant is that the district court erred in overturning the findings of the referee, and the argument is made that the findings of a referee, where he had the opportunity of seeing and observing the witnesses, may not be overturned by the court, where they are supported by any substantial evidence.  Counsel cites Field v. Romero, 7 N. M. 630, 41 Pac. 517; De Cordova v. Korte, 7 N. M. 678, 41 Pac. 526; Gentile v. Kennedy, 8 N. M. 347, 45 Pac. 879; Pueblo of Nambe v. Romero, 10 N. M. 58, 61 Pac. 122; Bank v. McClellan, 9 N. M. 636, 58 Pac. 247. These cases fully sustain the proposition for which they are cited, namely, that the findings of a master, when based upon conflicting evidence, are unassailable in the district court and in this court.  In 1897 this doctrine was sanctioned by statute, which now appears as section 4249, Code 1915, and applied the doctrine to referees to the same effect as was formerly accorded to report of masters in chancery.  This doctrine, however, was abrogated by section 5 of chapter 82 of the Laws

of 1901, which appears as section 4246, Code 1915. The language follows:

"All findings of law or fact, by any referee or other officer or person, authorized to make such findings, in any cause now or hereafter pending, in any district court of this state, shall be subject to be revised, changed, modified, annulled or reviewed by the court upon exceptions taken thereto by either party to the cause. And said findings and all judgments in such case shall be subject to revision and review on appeal or writ of error in the Supreme Court of the State."

It thus appears that the doctrine so long thoroughly established as to the unassailability of findings by masters in chancery and referees was entirely abrogated, and a new system brought into our jurisprudence. That system, presumably, was adopted by the Legislature by reason of the unsatisfactory results obtained under the old system. The ultimate decision of law and facts in each case was transferred to the courts and the findings of masters in chancery or referees were no longer to be deemed unassailable in the courts. All of the cases cited by counsel for appellant were decided prior to the enactment of section 4246, Code 1915, and are therefore no longer applicable to the question. The district court, therefore, was well within its powers when it overturned the findings of the referee in toto.

[2] Counsel for appellee suggest that the rule contended for by appellant is inapplicable in any event owing to the fact that the record does not disclose that the reference was made by consent. In this counsel for appellee are in error. In the absence of objection to the reference, consent will be presumed. De Cordova v. Korte, 7 N. M. 678, 41 Pac. 526; Bank v. McClellan, 9 N. M. 636, 58 Pac. 347.

[3] A kindred proposition is involved in this case, and it is the proposition as to this court's power to review the action of the district court in making its findings and conclusions in the case. Since the passage of section 4246, Code 1915, three cases have been decided by this court involving this proposition, but in

neither one of them was the statute referred to relied upon as authority for the court's action. The cases are Light Co. v. Improvement Co. 16 N. M. 86, 113 Pac. 848; Warren v. Kornegay, 20 N. M. 225, 147, Pac. 1197; Bolles v. Pecos Irr. Co. 23 N. M. 32, 167 Pac. 280. In those cases the decisions are based upon the reasoning that, where the district court does not see and hear the witnesses, he is in no better position than this court to decide upon the facts, and that therefore this court has power to review his findings. This reasoning is evidently sound, but we desire to cite the statute above mentioned as additional authority for our power in this regard.

[4] It appears from the pleadings and the transcript of the evidence that both parties to this controversy claim to trace title to a common predecessor in title, namely, the said Luis Jaramillo, the original grantee of the premises involved. The plaintiff deraigns title from one Saturnina Jaramillo, whom he alleges to be the grand-daughter of said original grantee. The defendant, however, claims that the Saturnina, from whom plaintiff deraigns his paper title, was the great-granddaughter of the original grantee, and that at the time of her conveyance she had no title or interest in the grant. The referee found that the Saturnina Jaramillo from whom plaintiff deraigned his title was the granddaughter of the original grantee, and that through mesne conveyances the plaintiff had acquired 2304-6912, or 1-3, of the grant. The court, after setting aside and holding for naught the findings of the referee, found upon the proofs that the plaintiff had acquired no interest in the land grant, by reason of the fact that Saturnina Jaramillo was the daughter of Luis Jaramillo, the second, who was the son of Luis Jaramillo, the first, the original grantee of the land grant in question, and that at the time of the conveyance by Saturnina to Jesus Maria Luna, the plaintiff's grantor, her father was living and had conveyed all of his in-

terest in the land grant to one Jesus Armijo y Jaramillo one of defendant's grantors.

This conclusion is based principally by the court upon the fact that, as he says, it was physically impossible that Saturnina could have been the daughter of the original grantee. The court was evidentally confused as to the facts in this regard. There is no claim made that Saturnina was the daughter of the original grantee. The genealogy claimed is as follows: Luis Jaramillo was the original grantee. He had one child, named Cristobal Jaramillo. Cristobal had four children, named Miguel Antonio, Luis, Guadalupe, and Saturnina; the later being the plaintiff's remote grantor. It thus appears that Saturnina was the granddaughter of the original grantee, and the sister of Luis Jaramillo, the second, instead of his daughter, as found by the court. We have examined all the testimony on this subject, and find no satisfactory evidence to the contrary. We do not deem it necessary to analyze the testimony in detail, but will simply say that the proof to the contrary bears upon its face evidence of lack of knowledge on the part of the witnesses giving the same, and general inaccuracy on their part, sufficient to deprive the evidence of any great weight.

This conclusion eliminates the basis upon which the district judge founded, principally, his decision on this branch of the case. It was not impossible, according to the course of nature, for the granddaughter of the original grantee to have been alive in April, 1886, the date on which she executed the deed to Jesus Maria Luna, one of plaintiff's grantors. It is true, as pointed out by counsel for appellee, that this grant was made in 1769 to Luis Jaramillo, in consideration of his services in the Spanish army for 36 years. Counsel for appellee claim that he must have been at least 56 years old at the date of the grant. Even so, his son Cristobal, father of Saturnina, may not have been very old when Saturnina was born in 1806; as inferentially she is shown to have been; the evidence showing that she was

about 80 years of age at the date of her deed in 1886 to Jesus Maria Luna, from whom plaintiff derives title through mesne conveyances. The court probably was confused as to the genealogy on account of a recital in the deed of Saturnina to Luna to the effect that she was daughter and heir of the original grantee. We feel sure, however, the evidence strongly preponderates that Saturnina was the granddaughter of the original grantee, and that her deed conveyed to Luna an undivided one-third interest in the grant as tenant in common.

[5] The deed of Saturnina Jaramillo to Jesus Maria Luna, heretofore mentioned, conveys:

"All the estate, right, title, interest, claim, and demand whatsoever to her, the said Saturnina Jaramillo as daughter and heir of said Luis Jaramillo, to and in a certain land grant given to the said Luis Jaramillo by one Pedro Fermin de Mendinueta, governor of the kingdom of New Mexico, on the 20th day of July, in the year of our Lord 1769, which is bounded," etc.

Counsel for appellee argue that the grantee in this deed and his privies, including the plaintiff, are estopped to deny this recital, and are therefore in no position to claim that Saturnina was not the daughter of the original grantee. It will not be necessary to consider the soundness or unsoundness of this proposition. The contention may be disposed of by saying that no question of estoppel by deed was either pleaded, or decided, or referred to in any way, in the record below, and for that reason it will not be considered here.

[6] The main proposition relied upon by appellee is that he has acquired title to the premises involved by adverse possession. A general survey of the situation in which the parties were placed discloses the following facts:(1) The appellee and his two brothers acquired an undivided interest as tenants in common in this grant from Luis Jaramillo, the second, by deed dated January 23, 1886. They acquired another undivided interest in the grant by deed dated March 29, 1886, executed by Paula Jaramillo, their mother. Luis, the grantor in

the first-mentioned deed, was the son of Cristobal, who was the son of Luis, the original grantee. Paula was the daughter of Miguel Antonio Jaramillo, who was one of the four children of Cristobal Jaramillo, who in turn was the son of Luis Jaramillo, the original grantee. Neither of these deeds purported to convey the entire grant, only the interest of the respective grantors therein which was necessarily only an undivided interest as tenants in common. Appellee and his two brothers, from time to time, acquired other interests from other tenants in common in the grant. (2) Jesus Maria Luna, under whom appellant claims, by deed dated April 26, 1886, acquired the interest of Saturnina Jaramillo, who as before seen, was the granddaughter of the original grantee. It thus appears that in the year 1886 the appellee and Jesus Maria Luna, under whom the appellant claims by mesne conveyances, became tenants in common of the grant. (3) On March 1, 1886, the whole grant was sold to appellee and his two brothers for taxes under an assessment to "unknown owners," and on August 25, 1892, a tax deed was made by the then sheriff of the county to appellee and his two brothers, purporting to convey the entire grant in pursuance of said tax sale. This is the only muniment of title shown by appellee purporting to convey title to the entire grant; all others being for undivided interests.

(4) It fairly appears from the proofs that the appellee and those with whom and under whom he claims are the only persons who have used and occupied the premises and exercised dominion over the same during the period of the statute of limitations prior to the institution of this suit. But this fact, standing alone, is insufficient to start the running of the statute. There is a strong presumption against every claim of a cotenant that he holds possession in opposition to the rights of his cotenants, and in the absence of evidence to that effect, he will be presumed to hold for all of the cotenants. Every element of adverse posession must be shown. There must be express denial of the title and right to possession of the fellow tenant, brought home

to the latter openly and unequivocally. 7 R. C. L. "Cotenancy," § 41; Cedar Canyon Con. Min. Co. v. Yarwood, 27 Wash. 271, 67 Pac. 749, 91 Am. St. Rep. 841, and note at page 867; Joyce v. Dyer, 189 Mass. 64, 75 N. E. 81, 109 Am. St. Rep. 603, and note; Allen v. Morris, 244 Mo. 357, 148 S. W. 905, Ann. Cas. 1913D, 1310, and note.

[7] Appellee, however, argues there is evidence in the record of actual ouster and adverse holding. The appellee testified that about the middle of April, 1886, Jesus Maria Luna, under whom plaintiff claims, came to the grant with his sheep; that the witness was going around the grant, and came to where his brother, Jesus, was ,and told him there were some people coming to the grant with sheep; that his brother, Jesus, served notice on Luna to please remove his sheep from there, because, he, Jesus, was occupying the place; that Luna came to the grant and asked to please allow him to lamb his sheep there, as the time of lambing was near, and if he were to remove them to some other place he would lose half of the lambs. The appellee then testified that he did not know what kind of an arrangement his brother, Jesus, and Luna had between them, whether Luna hired the place, or whether Jesus allowed him to lamb the sheep there outside of the grant and water the sheep at the watering place on the grant. He stated that after the lambing season was over Luna went to the ranch and told his foreman to leave the place and drive the sheep to Albuquerque and ship them to Denver; that Luna never came back again with any sheep; that no one ever came back, claiming under Luna, and that Luna never came back himself. He further testified that his brother, Jesus, asked Luna whether he had any papers by which he could claim any right to the land, and that Luna said that he had one, and that Jesus told him that he, Luna, had bought the title from Saturnina, who was the daughter of Luis Jaramillo, the second, during the lifetime of her father, and that he, Jesus, and his brothers, already had a deed from the

said Luis Jaramillo, father of Saturnina. He testified that, after this explanation, Luna was perfectly convinced that he had no right or title in the grant.

All of this testimony was objected to upon the ground that it was hearsay, but a careful reading of the same shows that, in so far as it is relevant and of importance, it is not hearsay. Whether the evidence is sufficient to show ouster is another question. The witness did not testify that his brother, Jesus, forbade Luna to use or occupy the grant as a whole, but merely stated that the particular place in question was being occupied by the Armijos. What arrangements were made as to the use of the premises the witness himself said he did not know. Another witness introduced by the appellee testified that Luna must have known of the claim made by Jesus, the brother of the appellee, and of the fact that he had ordered Luna's foreman to leave the grant as soon as the lambing of the sheep had been finished, because the foreman must have told Luna about it. The last testimony is wholly incompetent, as is plainly seen, and is a mere inference of the witness. This evidence, standing alone, would clearly be insufficient to meet the burden of proof resting on the cotenant in possession to show ouster. But the evidence, taken in connection with the statement that Jesus told Luna that he had purchased from Saturnina during the lifetime of her father, and that the Armijo brothers had already procured a deed from her father, is sufficient to show ouster. It is a clear and unequivocal denial of the right and title of Luna and his right to possession. This, under all of the authorities, is sufficient to show ouster, and to start the running of the statute of limitations in behalf of the cotenant in possession against a cotenant out of possession. See 7 R. C. L. "Cotenancy," §§ 40, 41; Joyce v. Dyer, 189 Mass. 64, 75 N. E. 81, 109 Am. St. Rep. 603, and note; Cedar Canyon Con. Min. Co. v. Yarwood, 27 Wash. 271, 67 Pac. 749, 91 Am. St. Rep. 841, and note; May v. Chesapeake & O. Ry. Co., 184 Ky. 493, 212 S. W. 131, Reed v. Bachman, 61 W. Va.

452, 57 S. E. 769, 123 Am. St. Rep. 996; Allen v. Morris, 24 Mo. 357, 18 S. W. 905, Ann. Cas. 1913D, 1310, and note.

As before noted, the testimony on this subject was all objected to as hearsay. There is one item in the proof which would seem to indicate that it was. It is to the effect that appellee's brother, Jesus, told him that the deed which Luna had was a deed from Saturnina, daughter of Luis Jaramillo, the second. But the testimony of appellee as a whole purports to be a recounting of what he knew personally, being in positive form to the effect that Jesus served notice on Luna to remove his sheep, and that he told Luna that his deed from Saturnina was obtained during the lifetime of her father, and when she had no title to convey, and that the Armijo brothers already had a deed from the father. If appellee was merely repeating what he had heard from his brother, Jesus, appellant had opportunity on cross-examination to develop the fact; but this subject was entirely neglected by him, and no showing was made that the testimony was hearsay. Counsel for appellant seek to avoid the consequences of this situation, showing ouster of Luna, by saying that at the time of the ouster Luna was not a cotenant. The argument is based upon the fact that the time fixed by appellee as to the occurrence of the ouster is "about the middle of April," and the fact that Luna's deed is dated April 26, 1886. The argument is faulty. In the first place, the witness did not purport to absolutely fix the date of the ouster. He said it was about the middle of April. In the second place, the ouster must have taken place after Luna had his deed, or the whole testimony of appellee in this regard must be a pure fabrication. We have no reason to so assume.

[8] We have, then, a case where a cotenant in possession has ousted a cotenant in April 1886, and thereby started running the statute of limitations. The situation as it then existed, as between the appellee and his two brothers and Luna and his successors in interest,

including the appellant, remained, so far as the record discloses, in this same condition from 1886 down to the date of the institution of this suit in August 1914. It appears from the record that the appellee has continuously since 1886 maintained the same kind of possession which he and his brothers were maintaining at that time. They and he have constantly kept caretakers at the place, with instructions to warn off trespassers and to maintain for them the possession of the property. Luna, so far as disclosed, never returned to the grant, and no one claiming under him ever asserted any right therein until the appellant brought this suit. Luna died shortly after the ouster, and his widow, although she had possession of the deed under which Luna took title, never asserted any claim to the property. Many years afterward (March 20, 1909) she conveyed to Mariano F. Sena, who, on October 1, 1910, conveyed to the appellant. Aside from these conveyances the appellant's grantors seem to have shown no interest whatever in the property. The same kind of possession and claim of right is thus shown to have persisted from the date of the ouster to the date of bringing this suit.

[9] At the time of the ouster in April, 1886, the property had been previously, on March 1, 1886, sold for taxes to appellee and his two brothers under an assessment to ''unknown owners.'' This sale was followed by a tax deed, dated August 25, 1892, based upon said tax sale, and purporting to convey the whole grant. Counsel for appellee, however, in the brief disclaims this tax deed as a muniment of title, and says that appellee relies upon it as merely color of title in connection with his alleged adverse possession. This renders unnecessary a discussion of the effect of the purchase by a cotenant' of the tax title to the common property, to which much time is devoted in the briefs. This property, at the time of the tax sale and the tax deed, was not subject to taxation. This grant was an imperfect grant, and the title was in the United States until the issuance of the patent in November, 1909.

This seems to be undisputed by the parties. As a muniment of title, therefore, the tax deed is unavailing, and it is so admitted.

The tax sale certificate issued on March 1, 1886, is not claimed by counsel for appellee to be color of title, but the tax deed of August 25, 1902, is claimed to be color of title. This is denied by counsel for appellant. An examination of the statute under which this tax sale and deed were made convinces us that the deed is color of title. This statute is chapter 62, Laws 1882, and the pertinent provisions thereof are sections 87 and 88 of the act, appearing as sections 2892 and 2893, Comp. Laws 1884, and as sections 4100 and 4101, Comp. Laws 1897. Section 4100 C. L. 1897, provides for the making of the deed, after the expiration of three years from the date of the tax sale, by the collector of the county to the purchaser or his assigns. Section 4101, C. L. 1897, provides that the deed shall vest in the purchaser all the right, title, interest, and estate of the former owner in and to the land conveyed, and shall be prima facie evidence of the following facts:

"First. That the real estate conveyed was subject to taxation, for the year, or years, stated in the deed. Second. That the taxes were not paid at any time before the sale. Third. That the real estate conveyed had not been redeemed from the sale at the date of the deed. Fourth. That the property had been listed and assessed at the time and in the manner required by law. Sixth. That the property was advertised for sale in the manner and for the time required by law. Seventh. That the property was sold for taxes as stated in the deed. Eighth. That the grantee named in the deed was the purchaser, or the heir at law, or the assignee of the purchaser. Ninth. That the sale was conducted in the manner required by law."

It thus appears that this deed is to have the effect of passing the title of the true owner to the purchaser at the tax sale, and prima facie establishes the fact that the property was subject to taxation. In order to establish the fact that the property was not subject to taxation, resort must be had to evidence aliunde the tax record. The deed on its face purports to convey an absolute title, and the weakness in the deed as a mu-

niment of title arises out of a fact not apparent upon the face of the deed. Under each circumstances, it is apparent that such a deed is color of title.

[**10**]   It is to be remembered that this tax deed was made to appellee and his two brothers, Jesus and Santos. The interest of Jesus was sold under a decree by a special master, and a deed dated March 12, 1903, was executed therefor to one Andres Romero . On March 23, 1903, Romero and wife conveyed to appellee. The interest of Santos was sold under execution to the First National Bank of Albuquerque, and sheriff's deed was executed to it, dated April 10, 1897. On August 31, 1910, the bank conveyed to appellee. On the latter date appellee for the first time was in position to say that he held possession under deeds purporting to convey an estate in fee simple in the whole grant, which date is a few days less than 4 years prior to the institution of this suit. Up to this time he was never in position to claim all or any portion of the grant in severalty under color of title. It is perfectly apparent, therefore that appellee is not so situated as to avail himself of his first plea in his answer, to the effect that he had held possession of the property under deeds purporting to convey an estate in fee simple for the required time, for the plain reason that he was never, until he received his deed from the First National Bank, dated August 31, 1910, anything more than a tenant in common, so far as his paper title or color of title is concerned. This situation prevents appellee from availing himself of the provisions of section 3364, Code 1915. This section has been considered in Montoya v. Heirs, 16 N. M. 349, 120 Pac. 676, affirmed Montoya v. Gonzales, 232 U. S. 375, 34 Sup. Ct. 413, 58 L. Ed. 645, in Montoya v. Catron, 22 N. M. 570, 166 Pac. 909, and in First National Bank v. Tome, 23 N. M. 255, 167 Pac. 733.

While the facts vary in these cases, they all agree that a deed purporting to convey title in fee simple to the whole or part of a land grant in severalty and possession thereunder for 10 years is necessary to mature

the right and bar the recovery by the true owner. This is not shown by the appellee. Montoya v. Heirs, 16 N. M. 349, 120 Pac 676; Jasperson v. Scharnikow, 150 Fed. 571, 80 C. C. A. 373, 15 L. R. A. (N. S.) 1178, and note.

[11] The same considerations, and others, confront the appellee in regard to his second plea in his answer, which is a plea of the statute of limitations, and which is founded upon the provisions of section 3365, Code 1915. This is a companion provision to section 3364, above referred to, but differs somewhat therefrom. Section 3364 is an affirmative provision, and in terms gives title to the one who has held for 10 years under a deed purporting to convey an estate in fee simple in land embraced within a Spanish or Mexican land grant. Section 3365, on the other hand, is a defensive provision, and is a general statute of limitations, not confined in its operation to land grants. The section as originally enacted, and as continued down to 1899, was recently considered in Manby v. Voorhees, 27 N. M. 511, 203 Pac. 543. It was pointed out in that case that occupancy under claim of right for 10 years was sufficient to defeat an adverse claim, and that no color of title was required. The appellee in the case at bar, however, alleged that he had held his adverse possession under deeds purporting to convey an estate in fee simple, which, as before seen, he had not. If his allegation had been that he and his grantors had been in possession under such deeds, then he might perhaps rely upon the tax deed from its date in 1892 to 1899, a period of 7 years, unless he and his brothers were disqualified persons to acquire a tax deed adverse to their cotenants, which is strongly urged, but which, for the present, at least ,we are not deciding. This 7 years, however, falls short of the statutory requirement of 10 years.

But appellee is confronted with another difficulty. Even assuming that he might rely on the tax deed dated August 25, 1892, as color of title, section 3365, as originally enacted, was amended by section 2 of

chapter 63, Laws 1899, which provides that no suit or action can be maintained, except within 10 years, against "any one having adverse possession * * * continuously, in good faith, under color of title, and who has paid the taxes lawfully assessed against the same." The section was further amended into its present form by chapter 76, Laws 1905. This act, it will be seen, retains the requirement of good faith, color of title, and defines adverse possession as being an actual and visible appropriation of land, commenced and continued under color of title and claim of right, inconsistent with and hostile to the claim of another, and provides that in no case must adverse possession be considered established, unless the party claiming such adverse possession, his predecessors or grantors, have for a period of 10 years, continuously paid all the taxes, state, county and municipal, which during that period have been levied upon the land.

It thus appears from 1886 or 1899 appellee and his two brothers, whose interests he afterward acquired, held adverse possession of the premises, assuming for the moment that the proof shows the character of the possession to be sufficient to constitute adverse possession, which is denied by appellant. Had appellee so pleaded his case, he might possibly be in a position to defend against appellant's claim. But appellee's right is not so pleaded, and he has failed to show adverse possession by himself under deed. He could not show this, because his deeds shown in evidence contradict the fact. This situation was expressly called to appellee's attention at the trial by proper objections to the deeds when offered. His plea of the statute of limitations, as a pleading, was good for the period from 1886 to 1899; but he failed in his proof. His plea, covering the period begining in 1889, was not a good plea of the statute of limitations, because from that time on the statute required good faith, color of title, and payment of taxes as a prerequisite to the establishment of adverse possession, and these elements

are not pleaded by the appellee, nor was payment of taxes shown.

Assuming as we do for the time being, that the character of the possession of appellee and his two brothers from 1886 to 1899 was such as to establish adverse possession on their part without color of title, it seems at first sight as rather a technical and hard rule to hold the appellee to the allegations of his answer; but we do not see how such a consequence can be avoided. Appellee has seen fit in his pleadings to characterize his alleged adverse possession by saying that it is under deed purporting to convey an estate in fee simple, and insisted upon the same at the trial.   As before seen, this is not and could not be true in fact.   Before the appellee could be allowed to recover as against the appellant, his whole answer would have to be amended, so as to allege adverse possession for 10 years in himself and his two brothers without color of title, and to allege a subsequent acquisition by him of the interests of his two brothers.   In this respect the pleadings in this case differ materially from those considered in Canavan v. Canavan, 17 N. M. 503, 131 Pac. 493, Ann. Cas. 1915B, 1064.   That was a divorce case, and the complaint omitted any allegation as to the residence of the plaintiff for the required statutory time prior to filing the complaint.   The parties, however, in their testimony both showed that the plaintiff was qualified by way of residence to maintain the action, and we held that the complaint, under the provisions of the Code of Civil Procedure, would be amended in this court to conform to the proofs.

In this case, however, the whole form and substance of the pleading, before the appellee could prevail, would have to be reconstructed along entirely different lines, and upon an entirely different theory as to the foundation of appellee's rights.   We know of no authority authorizing such action.   The issue between the parties by so doing would be entirely changed, and this is expressly prohibited by the sections of the Code of

Civil Procedure as shown in the Canavan Case. It thus appears that the appellee has failed both in his pleadings and his proof to establish an affirmative right to the whole grant under section 3364, Code 1915, and has likewise failed to establish his defensive right under section 3365, Code 1915.

We have discussed quite a number of points in this case, but we have purposely refrained from discussing some other matters, which might further embarrass the appellee in his claim. As before pointed out, since 1899 the statute required color of title; good faith, and payment of taxes. We have heretofore shown that color of title did not exist in the appellee covering that period until August 31, 1910, when appellee received his deed from the First National Bank of Albuquerque. The question of good faith in the holding under the tax deed is also involved in the case. It appears in the transcript that in 1910 a suit for taxes for the years 1902 and 1907, inclusive, upon this land grant, was brought in the county of Sandoval, and that the appellee defended said action on the ground that the grant was an imperfect grant, and not subject to taxation until the issuance of the patent, and that the district court in Sandoval county so held. Whether this circumstance would deprive the appellee of the right to claim adverse possession in good faith under his tax deed we do not decide, because we deem a decision of the point unnecessary in the case, and the same is merely mentioned, in order to bring the situation of the parties more clearly in view.

There is another question strenuously argued by counsel for the appellant, that the character of the possession shown to have been maintained by the appellee and his two brothers was such as not to fulfill the requirements of adverse posession. This proposition we likewise refrain from deciding, because it is unnecessary, in view of our conclusions upon the points already discussed. It may be said in this connection, however, that a general survey of the evidence leads to

the conclusion that the possession maintained by appellee and his two brothers did not extend to the limits of the grant, but was confined to the watering place thereon and the lands immediately surrounding the same.

There is likewise involved the proposition, put forward by counsel for appellant, that cotenants are disqualified and cannot take under a tax deed title to the common property to the disadvantage of their cotenants. This proposition is likewise put aside as unnecessary to a decision of the case.

It follows, from all of the foregoing, that the judgment of the district court is erroneous, and should be reversed, and the cause remanded, with directions to set aside the judgment and enter judgment for the appellant, establishing his title to an undivided one-third interest in the property involved, and to proceed with the cause to partition of the premises as prayed in the complaint; and it is so ordered.

HOLLOMAN, District Judge, concurs.

RAYNOLDS, C. J., being disqualified, and DAVIS, J., not having heard the argument, did not participate.

On Motion for Rehearing

PARKER, C. J. In the motion for a rehearing filed in this case it has been called to our attention that certain persons, who have or claim interests in the subject-matter of the action, have not been brought before this court, and that the court has no jurisdiction over them. It further appears from the record that each of the contending parties has paid taxes upon the common property, and that no accounting was had between them upon which an order for contribution could be made, owing to the course the judgment took in the court below. In the original opinion we ordered that the judgment be reversed and that the cause be remanded, with directions to set aside the judgment and enter judgment for the appellant establishing his title

to an undivided one-third interest in the property involved, and to proceed with the cause to partition of the premises as prayed in the complaint.

In view of the situation this order will be modified to read as follows: That the judgment be reversed and the cause remanded, with directions to set aside the judgment, and to proceed with the cause, upon the issues as framed between the parties now before the court, and such others as may be presented by others parties, if any, to final judgment and to partition of the premises as prayed in the complaint, and in accordance with the opinion.

We have examined the other branches of the motion for a rehearing, and find nothing therein requiring any change of view from that which was expressed in the original opinion, and the motion, in so far as these matters are concerned, will be denied; and it is so ordered.

HOLLOMAN, J., concurs.