[No. 33.17.    May 23, 1929.]

[Rehearing Denied Jan. 29, 1930.]

HORTON v. ATCHISON, T. & S. F. RY. CO.

[288 Pac. 1065.]

Action by Thomas B. Horton against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant appeals.

W. C. Reid, of Albuquerque, J. M. Hervey, of Roswell, and E. C. Iden, of Albuquerque, for appellant.

Marron & Wood, of Albuquerque, for appellee.

OPINION OF THE COURT

CATRON, J.

This is a suit by Thomas B. Horton against the Atchison, Topeka & Santa Fe Railway Company for damages resulting from alleged negligence of the defendant. Trial was to a jury, who found the issues in favor of the plaintiff and assessed his damages at $6,875. Defendant filed a motion for a new trial which was overruled, and thereupon judgment was entered against the defendant for said amount, together with the costs of the suit.

The complaint alleges that during the month of February, 1925, plaintiff was a car repairer in the employ of the defendant railway company at Albuquerque; that the company furnished him such tools as were required in that occupation; that about the 18th of February, 1925, while so employed, he was sent by the company to inspect and repair some freight cars then in use, and was furnished for use in such work one certain hammer which was out of repair and defective, in that the handle thereof was broken inside the head or eye of the hammer in such manner as not to be apparent or visible to any person using the same, rendering it an unsafe implement to supply to a workman for use; that the defendant, through its proper agents and servants in charge of furnishings and supplying said tools, had been notified and advised and was well aware of the dangerous and defective condition of the said hammer, and had been requested to and had promised to repair the same, but had failed and neglected to do so, and, so knowing the hammer to be broken and defective, had furnished and supplied the same to the plaintiff for use in and about the aforesaid work; that the plaintiff, not

knowing the hammer to be so defective, attempted to use the same in and about his work, and while so using the same the head thereof flew from the handle, and a portion of the hammer, because of such defective condition, or a piece of metal so caused to be detached by the defective action of the hammer, struck the plaintiff about the head, and face, and eye, and so badly injured the plaintiff as to cause and produce the total loss of the sight of his eye.

Defendant denies all of the material allegations of the complaint, and as an alternative answer pleads negligence on the part of plaintiff that either contributed to the injury or was the sole cause of the accident resulting in said injury. As a further alternative defense, defendant pleads assumption of risk by the plaintiff, on the theory that the defect in the hammer, if any there was, was latent, and that a hammer is a simple tool, and the risks in using same are the ordinary risks of an employee and assumed by him.

Plaintiff's reply denied all new matter contained in the answer.

In order to prove that the injury sustained by plaintiff resulted in the loss of sight in his left eye, plaintiff called two eye specialists, Dr. H. L. Brehmer and Dr. E. C. Matthews, and after qualifying them as expert witnesses, propounded a hypothetical question to each. Although the questions are quite different in their phraseology, they are in effect substantially the same, so we will only consider the one propounded to Dr. E. C. Matthews, which is:

"Assuming, Doctor, that a day or two at the outside before he came to you he had been working with a machinist's hammer weighing in the neighborhood of two pounds like the one which I show you and that striking a blow looking down underneath a freight car and striking the blow towards him, a hard lick, the head of that hammer came off and struck him a blow across the left eye after striking the metal part of this freight car on its journey, and carried with it some material, or that at the same time some material got into his eye, and that the blow with the head of this hammer of the kind I have described struck him on that eye; that his vision before that time had been normal and that there was no trouble with his eyes or either of them except some operation for pterygium which had taken place some eight years earlier and from which he had suffered no evil effects; that immediately after this injury to his eye he was practically visionless except that he could see a number of dancing visions, when

he would look at a person he would see a number there, and that there was an injury and wound upon the eye of the kind that you discovered and saw; that since that time this eye had little or no vision and the vision is fading more and more until now he has practically none at all in the left eye, and that the right eye has no sign or evidence of cataract in it but is apparently normal for a man of his years. From that recital and the evidence of the cataract as you now find it, Doctor, would you have an opinion, from the facts as I have recited them to you, what has caused and produced the condition of that left eye as you now find it?"

To the foregoing question defendant made the following objection:

"We object to that hypothetical question as without a basis of proof as to the hypothesis stated, and principally upon the ground that the allegation of the complaint is that a foreign substance from the head of the hammer or the body which the hammer struck was the cause of this injury. We are not prepared to meet the attempted proof here of a different kind of injury entirely, and it is immaterial so far as the allegations of this complaint is concerned as to the striking with the hammer; they have predicated their case upon an injury caused by a substance in the eye and not to a blow on the outside, and it is improper and immaterial as to the blow of the head of the hammer itself under the pleadings of this case."

The court overruled the objection, and defendant excepted and here assigns the ruling of the court as reversible error.

In answer to the questions both doctors gave it as their opinion that the traumatic cataract which they found in the left eye of plaintiff is the result of the injury described in the hypothetical question, and that the loss of sight in the eye is due to said cataract. They further testified that a traumatic cataract is caused either by a blow or concussion which does not rupture the eye, or a penetrating wound or cut which involves the lens of the eye.

Based upon the hypothetical questions, we therefore have testimony, given over the objection and exception of defendant, from which the jury could conclude that the traumatic cataract and resulting loss of sight was caused, either by the blow from the hammer head, or by a cut from a foreign substance, and indeed part of the jury may have reached one conclusion and the remainder the other.

Appellant and appellee are in sharp conflict concerning the allegations of the complaint, whether or not they are

broad enough to support the hypothetical questions and answers thereto. Appellant contends that plaintiff charged the loss of sight as due to a cut by a foreign substance detached from the hammer head or from some part of the car which the flying hammer head struck. Appellee contends that he has alleged the injury in the alternative, either a blow from the flying hammer head itself, or a cut from a foreign body detached by the flying hammer head of the defective hammer.

The meaning of the language used by plaintiff in his complaint cannot be said to be exactly clear and concise. It can be construed to support either appellant's or appellee's contention.

As we view this case, it is not within the province of this court now to construe the issues presented by the complaint. The trial court did that in clear and concise language in its first instruction to the jury, which is as follows:

"1. The plaintiff by his complaint claims that while employed by the defendant company he was injured in his left eye while using a hammer furnished him by the defendant company, that while using the hammer the head flew from the handle and a piece of metal detached by the action of the hammer head caused the injury to his eye; that the flying off of the hammer head was caused by a defective handle; that the defendant through it agents had been notified of the defective condition of the hammer but had negligently allowed plaintiff to use the same without repairing it."

Neither plaintiff nor defendant objected to the foregoing instruction. They adopted it as the correct construction of the complaint and acquiesced in it as their theory of the case and as presenting the issue which the jury were to decide. If the court's construction was not correct, it certainly was plaintiff's duty to in some manner call the court's attention to such fact and give the court an opportunity to correct the instruction.

This court has from its very inception held that questions other than jurisdictional ones not raised, presented, or passed upon by the trial court, will not be reviewed upon appeal.

In the case of Park v. Milligan, 27 N. M. 96-99, 196 P. 178, 179, we said:

"Appellant now seeks to shift his ground and maintain that as the contract gave no right to possession to appellee, he (the appellee) was entitled to none, and was either a trespasser or licensee, and that ejectment will lie against him. The appellant cannot thus shift his ground and raise the questions which were not presented to the trial court, as has been often decided. Questions, points, issues, and matters which are not jurisdictional, not raised, presented, or passed upon below, are not reviewable on appeal." (We omit the citations.)

In the case of Cadwell v. Higginbotham, 20 N. M. 482, 505, 151 P. 315, 321, a case repeatedly cited by this court, the court in considering an argument made by the appellee in support of the judgment in the lower court held:

"The appellate court will adhere to the construction of the pleadings made by the trial court. [Citing cases.]"

See also Canavan v. Canavan, 17 N. M. 503-507, 131 P. 493, Ann. Cas. 1915B, 1064; Springer v. Wasson, 25 N. M. 379-385, 183 P. 398; 2 R. C. L. (Appeal and Error) § 156; 3 C. J. (Appeal and Error) §§ 618, 620, 623, 753, and notes; Vol. 1, Third Decennial Digest, Appeal and Error, key 171(3).

In the case of Cadwell v. Higginbotham, supra, this court further held:

"Appellees cannot, in this court, shift the ground on which their complaint proceeds, and the judgment stands, and now advance new theories to sustain the judgment of the lower court. This question was passed upon by the territorial court in the case of San Marcial Land & Improvement Co. v. Stapleton, 4 N. M. [Gildersleeve] 8 [12 P. 621]."

See also Bradford v. Armijo et al., 28 N. M. 288-296, 210 P. 1070; McDonald v. Mazon, 23 N. M. 439, 168 P. 1069; 2 R. C. L. (Appeal and Error) § 156; 3 C. J. (Appeal and Error) §§ 618, 632 and notes; Vol. 1, Third Decennial Digest, Appeal and Error, key 171(1), 172(1).

We must here adopt the trial court's construction of the complaint as expressed in the instruction given and as the theory upon which this case was tried by both counsel and submitted to the jury, and we cannot here consider a new

and different theory now advanced by appellee to support his judgment.

. It follows that the court erred in overruling the objections of defendant to the hypothetical questions and admitting evidence for the consideration of the jury concerning an injury from a hammer head blow in the eye, such questions and evidence not being within the theory of the case or the issues presented to the jury by the court's instruction.

Appellant has presented other assignments of error, but inasmuch as we must reverse this case and remand the same for a new trial, it becomes unnecessary to further consider such questions.

We must therefore reverse this case and remand the same, with directions to set aside the judgment and grant a new trial; and it is so ordered.

BICKLEY, C. J., and WATSON, J., concur.

PARKER and SIMMS, JJ., did not participate.