14 P.(2d) 733

## MAESTAS v. ALAMEDA CATTLE CO., Inc.

### No. 3653.

Supreme Court of New Mexico.

Aug. 3, 1932.

Rehearing Denied Oct. 11, 1932.

Raymond R. Ryan, of Albuquerque, for appellant.

Thomas J. Mabry, of Albuquerque, for appellee.

WATSON, J.

This appeal is from a judgment upon a verdict awarding damages in a common-law action for negligence of a master, resulting in personal injury to a servant.

Defendant's answer is a general denial. At the close of plaintiff's case in chief, defendant demurred to the complaint and moved to dismiss it for failure to state facts constituting a cause of action; moved to strike certain testimony as not admissible under the complaint as a basis of recovery; moved to strike certain other testimony on another ground; and moved for a directed verdict. These motions having been overruled, defendant elected to stand on them, introduced no evidence, and did nothing further but except to the instructions.

Appellant's first proposition here is that the complaint fails to state facts constituting a cause of action.

Whatever the shortcomings of the complaint, appellant availed itself of none of the opportunities to improve it. It was content to deny it generally and to go to trial on it. The only question now is whether it contains a statement of facts constituting a cause of action. 1929 Comp. St. § 105-404. In this kind of a case, as appellant suggests and we agree, the essentials will be allegations showing a duty, a breach of it, and injury proximately caused by the breach.

Varying somewhat the order of allegation, and combining and abbreviating, we may say that the complaint contains these allegations:

Defendant, in its business of cattle ranching, employed a pump jack with cogwheels, which would cause injury to a person whose clothing or body came in contact with them. Ordinarily such wheels are furnished with a guard, a simple and inexpensive device. The wheels in question were not guarded. The plaintiff was employed as a ranch laborer, and, though he informed defendant that he was inexperienced in operating such machinery and had great difficulty in seeing what he was about (he being partially blind and of failing eyesight), defendant set him to operating the pump jack and the gas engine which furnished its motive power, and required him to oil and grease the same and keep it going. Defendant at all times had notice of the dangerous condition of the pump jack, and that it constituted a dangerous instrumentality, especially to plaintiff with his failing eyesight, and, several days before the occurrence of the injury, promised plaintiff immediately to cure the dangerous condition and to cover and guard the cogwheels for plaintiff's protection. Plaintiff continued his work in reliance upon this promise. On the day in question, while in the regular course of his employment, plaintiff "was struck by a gust of wind blowing through an open door of the pump house and forced and made to slip on the floor, and stumble against the unguarded, uncovered and unprotected * * * pump jack, and his * * * hand was then and there * * * cut off."

Conceiving that, under the complaint, the alleged proximate cause of the injury was the "gust of wind," and that the unguarded cog-

wheels were but a condition, appellant invokes the propositions that the master's duty to furnish a safe place to work does not include a provision against accidents which he could not reasonably be expected to foresee, and that negligence is not actionable unless it be the natural and probable cause of the injury. These propositions we need not question.

We think, however, that the learned counsel for appellant attaches undue importance to the gust of wind. It was itself a mere circumstance or condition, probably unnecessarily pleaded. One who is required to keep machinery running and to oil and grease it is likely to come in contact with it as a result of accidental slipping or falling, or of any occurrence momentarily distracting the attention. Such contact is to be anticipated. It will result in injury or not, according as the master has guarded the machinery in the usual manner. So it seems to us that it is the lack of a guard, rather than the slipping or the gust of wind which caused it, that this complaint relies on as the proximate cause— the "cause which, in natural and continued sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred." Lutz v. Atlantic & Pacific R. Co., 6 N. M. 496, 30 P. 912, 916, 16 L. R. A. 819. Neither the wind nor the slipping fulfills this definition. It may be that they are causes without which the result would not have occurred. But neither produced the result in natural and continued sequence, and, as to each, there was an efficient intervening cause.

Appellant's next point is that there was a fatal variance between allegations and proof, to an extent that the verdict may not be deemed responsive to the complaint.

While appellee alleged that "he was struck by a gust of wind * * * and forced and made to slip on the floor, and stumble against the unguarded, uncovered and unprotected * * * pump jack"; he testified in substance: "I was oiling the cogwheels with an old tomato can. I did not have a long can with a spout to it to oil with. Just as I had finished to oil this part where the guard was missing, when I was going to take my hand away, I am not certain, I wasn't certain whether I was going to withdraw from the engine because there was a lot of wind coming in through the doors, before I moved it I was hurt." He said nothing about slipping or stumbling.

We do not understand that variance in minor attending facts is relied upon by appellant; his principal contention being that the effect of the variance is to switch the probable cause from the gust of wind to the unguarded cogwheels, and to bring in the new theory that, in oiling the dangerous and unguarded part with an unfit instrument, the hand came in contact with it.

True, the evidence puts the matter in a somewhat different light than the complaint put it. We cannot agree, however, that it discloses "an entirely different cause of the injury." Under either version of what happened, we regard the negligent failure to guard the cogwheels as the efficient cause.

We think also that, under the allegations that appellee was required to oil and grease the machinery and to keep it running, and that the injury occurred "when he was in the regular course of his employment," it was proper to admit the evidence that he was at the moment engaged in oiling the cogwheels. We think, likewise, as counsel himself suggested at the trial, that appellee's impaired vision had a place in the case as bearing upon the question of appreciation of danger, and that the fact that he was working with a tomato can instead of a regular oil can, was admissible as one of the facts immediately attending the injury.

It may be that the jury reached its verdict or that some jurors concurred in it in the view that it was negligence thus to employ a partially blind person, or to require him to oil cogwheels with a tomato can. The way to prevent that was by instructions limiting the effect of those facts. Appellant made no such request.

Appellant next contends that, under the theory of fact which appellee was permitted to adopt at the trial, the doctrine of assumption of risk precludes recovery.

Appellant relies on two main conclusions of fact: First, that appellee knew the danger as well as appellant, if not better; and, second, that there was no necessity, and he had no business, to oil the machinery while running.

The evidence is somewhat conflicting as to whether the necessities and his instructions justified appellee in oiling the exposed cog-

wheels without stopping the engine. This was a question for the jury.

Appellee knew that his vision was poor and the room poorly lighted. A day or two before the accident he had heard a remark that "A person would be liable to cut an arm off there in those wheels on account of it not being guarded." This was his first knowledge that a customary safeguard was lacking, and his first knowledge of danger. It caused him to suggest to the foreman that "A person was liable to get hurt," and to ask him "Why he didn't fix that place there." The foreman told him not to be afraid, to continue to work, and that "he would fix it right away."

It was possible, of course, to oil these parts without injury. Appreciation of the danger would depend somewhat on experience. Appellee had had no previous experience. He knew that fact too. But we cannot say whether it tended to extra caution or to a lesser degree of appreciation of danger.

We think this case well within Crawford v. Western Clay, etc., Co., 20 N. M. 555, 151 P. 238, 239, where, after setting forth the facts, we concluded: "Whether the deceased knew and appreciated the danger and nevertheless performed the service, or whether the conditions were such that he, as an ordinarily prudent man, must have known the danger, is a matter of fact about which minds of men might differ, and the question was for the jury."

See, also, Singer v. Swartz, 22 N. M. 84, 159 P. 745; Leyba v. Albuquerque & Cerrillos Coal Co., 22 N. M. 455, 164 P. 823; Leyba v. Albuquerque & Cerrillos Coal Co., 25 N. M. 308, 182 P. 860.

Concluding that this is not, as matter of law, a case of assumption of risk, we need not consider the effect of appellant's promise to repair as justification of appellee's continuing to work.

There is no evidence that appellee performed in a negligent manner the work of oiling the part with the instrumentality furnished. Appellant's contention of contributory negligence is a claim that it was negligence to oil the part at all with the pump jack in motion. This we think presents the same question already disposed of in considering assumption of risk.

It is contended that evidence of appellee's poor vision was inadmissible and should have been stricken on appellant's motion, as the complaint predicated no liability upon it. As already suggested, it was relevant as bearing on assumption of risk. Appellant did not ask the court for an instruction limiting its purpose and effect.

Appellant's motion to strike all evidence to the effect that it had ordered appellee to oil the pump jack while in motion, was predicated on the theory, which we here reject, that as matter of law the act, to appellee's knowledge, was so highly dangerous that he assumed the risk, notwithstanding appellant's order.

We conclude that the judgment should be affirmed and the cause remanded.

It is so ordered.

BICKLEY, C. J., and SADLER and HUD-SPETH, JJ., concur.

PARKER, J., did not participate.

### On Motion for Rehearing.

WATSON, J.

Appellant vigorously renews and ably reargues two questions: Insufficiency of the complaint to state a cause of action, and variance between complaint and proof.

Under the first point it is again urged that the facts as pleaded disclose that the unguarded condition of the machinery was not the proximate cause of the injury.

The question of causation has produced much nice reasoning and many divergent views. The case before us does not involve great difficulty, as we see it. We deem argument unnecessary to demonstrate that, as the facts were pleaded, the efficient cause of the injury was the unguarded cogwheels. The intervening accident of stumbling was of itself inefficient to produce the injury. Therefore, it would not necessarily break the chain of causation. Thompson, Commentaries on Negligence, § 54 et seq; "Negligence," 45 C. J. § 490.

The question then arises whether this intervening and inefficient circumstance, in the absence of which the particular injury would not have occurred, serves for any reason to defeat appellant's liability. The generally accepted test is whether it was reasonably to have been anticipated.

So far as involved in the law of negligence and of master and servant, the reason for guarding dangerous machinery is that contact with it will result in injury. If nothing untoward should occur to bring about contact, the negligence will be harmless. If contact should be occasioned through a negligent act of the servant, the master will not be liable for it. So, the only case of liability will result from some circumstance or act not amounting to negligence on the servant's part. If the master may generally point to such circumstance or act, without which there would have been no contact, as interrupting the chain of causality, and as relieving him from liability, there will be no cases of recovery. Doctrines which have found acceptance at some times and in some quarters would logically come to that.

The circumstance of a servant stumbling into dangerous machinery in the course of his employment is so common an experience and of such frequent occurrence, and accordingly so probable, that it seems to us that the risk of it must be in the mind of a prudent person charged with the legal duties of master.

Cases are brought to our attention which support the contention that such stumbling into unguarded machinery is not reasonably to be anticipated, and that it is no part of the master's duty to guard against such an occurrence. Those cases are found collected in a note to Labatt's Master & Servant (2d Ed.) § 1575, where the author says: "In some cases where a servant has slipped or stumbled and been injured because of unguarded ma-

chinery or of some other dangerous condition due to the master's negligence, it has been held that the slipping was the proximate cause of the injury, and consequently the master was not liable for the injury."

Later in the same discussion it is said: "The fact that the immediate cause of the servant's being injured by coming in contact with machinery which should have been guarded, or of his being injured in some other way, was a slip or stumble, will not, according to the great weight of authority, prevent the master's negligence from being considered the proximate cause of the injury."

Cases may be and have been cited in which the combination of circumstances was so extraordinary that to hold the master to a duty of anticipating them would have been to require of him an imaginative and fearful mind, rather than a prudent and foreseeing judgment. This is not such a case.

Construing the present complaint most strictly against the pleader, we might attribute the injury to an act of God. If the "gust of wind" did literally "force" appellee and "make" him to slip and stumble, we might have an intervening cause not reasonably to have been anticipated. But a mere gust of wind would not have accomplished so much, as experience tells us. Indulging a reasonable construction, the pleader evidently meant to aver, not that the physical force of a gale of wind threw him into the machinery, but that (for some unexplained reason) the gust of wind caused or occasioned his slipping or stumbling. It might be going far to require

of appellant that he anticipate that a gust of wind or any other particular circumstance would result in stumbling. It would be going just as far in the other direction to say that appellant could not reasonably have anticipated a stumbling. As you multiply the peculiar imaginable circumstances which may result in stumbling, you render it less likely that the particular occasion would be a gust of wind, but more likely that there would be a stumbling.

Appellant urges that except as required by statutes, such as the factory acts, no duty rests upon the master to guard dangerous machinery, and that failure to do so is not in itself negligence, citing 39 C. J. pp. 401, 403. This same text, however, embraces the proposition that the master's duty to furnish a safe place to work and safe appliances, includes the duty to guard machinery where safety requires. We cannot doubt that the circumstances here pleaded were properly to be submitted to a jury for determination of the master's duty.

As may be seen, we have construed the complaint liberally to support the judgment. Appellant objects that its right to challenge the sufficiency of the complaint was not lost or disparaged by his answering it and going to trial. It is true that the right remains open, but we think that, if postponed as in this case, the rule of construction is different. While pleadings are in the formative stage, the parties may well insist upon strict construction and the framing of sharp issues. Mayer v. Lane, 33 N. M. 18, 262 P. 178,

cited by appellant, is such a case. But the rules of pleading are intended to bring out the issues; not to promote surprise. To withhold the objection until the plaintiff has rested his case, puts him at a disadvantage and impedes the proper efforts of the court to reach a just conclusion on the merits. When the objection appears at such late stage, the endeavor should be to sustain the complaint if by taking a liberal view its averments will support a judgment.

Such is the rule laid down in State Bank of Commerce v. Western Union Telegraph Co., 19 N. M. 211, 142 P. 156, L. R. A. 1915A, 120. In that case the challenge was first effectively made on appeal. The reason for liberality of construction is somewhat stronger at that later stage in the proceedings. The principle is the same. We assume that the learned district judge, in view of the belated attack, construed the complaint about as we have. A reasonable interpretation of the pleadings below is binding on appeal. Gaastra v. Holmes, 36 N. M. 175, 10 P.(2d) 589; Horton v. Atchison, T. & S. F. R. Co., 34 N. M. 594, 288 P. 1065.

We come now to the question of variance. It consists, first, in reducing the gust of wind from an overpowering physical force to a mere cause of distraction; and, second, in putting appellee in the act of oiling the dangerous part.

We have already endeavored to harmonize the first claimed variance by construction of the complaint. Appellant urges that the second goes to the substance of the case, and that the pleading misled it and deprived it of available defenses.

First, it is argued, it affects appellant's duty—one thing if the servant was injured while oiling the dangerous part; another, if he merely stumbled into it in passing. If so, it would also affect the question of proximate cause. By what we have said we have minimized this difference. In either case it was a question for the jury, under proper instructions as to the master's duty, to provide a safe place to work and safe appliances, and as to proximate cause. The allegation that appellee was in the course of the employment might have been attacked by motion to make more definite and certain. Since it was not, we must assume that the preparation of appellant's defense did not require greater particularity. In proof of that allegation it was proper to permit appellee to show that he was oiling the cogs, or whatever other particular duty he was engaged in.

Then, it is argued, if the complaint had given notice of the claim that the injury occurred while appellee was engaged in oiling the dangerous part, appellant could and would have pleaded assumption of risk, contributory negligence, and appreciation of danger. The argument has force as to the importance of particularity in the complaint. It might well have prevailed on a motion to make more definite and certain. We do not find it persuasive in this proceeding to reverse the judgment.

We conclude that the appeal has been correctly determined. The motion for rehearing is therefore denied.

BICKLEY, C. J., and SADLER and HUDSPETH, JJ., concur.