[No. 997.   February 26, 1903.]

## JOSEPH T. JOHNSTON et al., Appellants, v. CITY OF ALBUQUERQUE et al., Appellees.

### SYLLABUS.

1. A person claiming ownership of a piece of land on the Albuquerque town grant, by means of the running of the statute of limitations, must have been in the actual, visible, exclusive, hostile and continued possession thereof for the period of ten years.

Appeal from the district court of Bernalillo county, before B. S. Baker, Associate Justice.   Affirmed.

William B. Childers for appellants.

Entering the land in question in pursuance of sec. 3753 under claim of right as the first occupier, was an appropriation, and continuous, open, adverse possession for the period mentioned in our statute of limita-

tions, ten years, would ripen into a title by adverse possession as against the whole world.

> Probst v. Presbyterian Church, 129 U. S. 182; The Lessee of Ewing v. Burnett, 11 Pet. 52; Dibble v. Land Co., 163 U. S. 72; Maxwell Land Grant Co. v. Dawson, 151 U. S. 606, 607; Solomon v. Yrissarri, 9 N. M. 480; N. M. R. G. & P. Ry. Co. v. Crouch, 4 N. M. 298.

"There may be a possession in fact of land not actually enclosed by the possessor."

> Ellicott v. Pearl, 10 Pet. 442.

"If there is continuous dominion manifested by continuous acts of ownership it is sufficient."

> Coleman v. Billings, 89 Ill. 189; Railroad Co. v. Crouch, 4 N. M. 298, 299; The Lessee of Ewing v. Burnett, supra; Moore et al. v. McCowan, 20 S. W. 1112; Morrison v. Kelley, 22 Ill. 610, 74 Am. Dec. 169; Worthley v. Burbanks, 45 N. E. (Ind.) 780; Eddy v. Gage, (Ill.), 35 N. E. 347; Tucker v. Show (Ill.), 41 N. E. 914; Bowen v. Guild, 130 Mass. 123; Murphy v. Doyle, 37 Minn. 113, 33 N. W. 220.

It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use, such as is consistent with the character of the premises in question.

> Murray v. Hudson (Mich.), 32 N. W. 889; Whittaker v. Shooting Club (Mich.), 60 N. W. 983; Twohig v. Leamer (Neb.), 67 N. W. 152; Cooper v. Morris, 48 N. J. Law. 607, 7 Atl. 427; Holbrook v. Gouveneur (Ill.), 3 N. E. 220.

Acts of ownership, such as returning land for assessment, payment of taxes, going upon the land, offering it for sale, openly and notoriously claiming it, may be given in evidence in connection with acts showing possession, such as fencing and cultivating as tending to prove adverse possession.

Stockton et al. v. Geissler, 43 Kas. 612, 23 Pac. 619; Partridge v. Shepard (Cal.), 12 Pac. 480; McNoble v. Justiniano (Cal.), 11 Pac. 742; Ross v. Evans, 4 Pac. 443.

The payment of taxes may with other circumstances be considered by the jury, as bearing upon the question of adverse possession.

Draper v. Shoot, 25 Mo. 197; Lantry v. Parker, 37 Neb. 353; Collett v. Board, 19 Ind. 27, 29 N. E. 329; Wood on Limitations, 268.

It is well settled that to constitute an abandonment of a right secured, there must be a clear, unequivocal and decisive act of the party; an act done, which shows a determination in the individual not to have a benefit which is designed for him.

Dawson v. Daniel, 7 Fed. Cases p. 214, Case No. 3669; Moon v. Rollins, 36 Cal. 333, 95 Am. Dec. 181; Judson v. Malloy, 40 Cal. 309, 310; Richardson v. McNulty, 24 Cal. 345.

An abandonment is the actual leaving of property with the intention of relinquishing all claim or right thereto.

Clark v. Hammerle, 36 Mo. 620; Waring v. Crow, 11 Cal. 369; St. John v. Kidd, 26 Cal. 272; Mallet v. Uncle Sam, etc., Co., 1 Nev. 188; Landis v. Perkins, 12 Mo. 238; Morenhaut v. Wilson, 52 Cal. 263; New York Indians v. United States, 170 U. S. 35; Hicks v. Steigleman, 49 Miss. 377.

Absence from the land does not constitute an abandonment.

Cravens v. Moore, 61 Mo. 184; Langdon v. Templeton, 66 Vt. 173, 28 Atl. 866; Sherman v. Kane, 86 N. Y. 65; 1 Am. and Eng. Ency. (2 Ed.), p. 842, note 2; Jones v. Hughes, 16 Atl. 850; Moore v. Hinkle, 151 Ind. 543.

The plaintiff Johnston was entitled to a conveyance from the city.

Perry on Trusts, sec, 520.

SUMMERS BURKHART for appellees.

In construing the words, "open and adverse pos-
session" used in the act, they must be given their ordi-
narily accepted and well-defined legal meaning.     Pos-
session to be adverse must be adverse to the whole
world, and such as would ripen into a legal title if con-
tinued during the statutory period.

> Sharon v. Tucker, 144 U. S. 533, 548;
> Armstrong v. Morrill, 81 U. S. 120; Wood on
> Limitations, sec. 257; Jackson v. Porter, 1
> Paine U. S. 457; Ward v. Cochrane, 150 U. S.
> 598; Harvey v. Tyler, 2 Wall. 328; Probst v.
> Presbyterian Church, 129 U. S. 190.

The intention with which property is taken or held
is regarded as a controlling factor in determining
whether or not it is adverse.

> Ewing v. Burnett, 11 Peters 41-52; Zel-
> ler v. Eckert, 4 How. 289.

As to the payment of the taxes see—

> 5 Cyclopedia of Law and Procedure, 922
> and cases cited.

Except by act of Congress, no possession however
long continued and uninterrupted can ripen into a title
as against the United States.

> Jordan v. Barrett, 4 How. 169; Gibson v.
> Chorteau, 13 Wall. 92; Oaksmith v. Johnson,
> 92 U. S. 343.

### STATEMENT OF FACTS.

In the fall of 1887, one Martin went upon the tract
of land in controversy, which comprises an area of be-
tween seventy and eighty acres, and which is situated
within what was then commonly known as the "Town
of Albuquerque grant." This grant was afterwards con-

firmed to the city of Albuquerque, in trust by act of Congress of February 18, 1901.

Shortly after entering on the land Martin erected a fence consisting of posts and wires around the greater portion of the exterior boundaries of the tract, but a gap was left at the southwest corner of the land, about six hundred feet wide, which has never been fenced. At the same time Martin built a small house near the southwest corner of the premises, in which he lived for two or three years, but moved away from it shortly before he died. At the same time he also built a small stable. In December, 1887, Martin and appellant Johnston entered into an agreement to become copartners and joint owners of the south one-half, southwest one-fourth of section twenty-one, township ten north, range three east. The greater portion of the land in controversy is included within this description. By the agreement each party was to pay one-half of the expenses, for the management of the land, and for improvements which they might make thereon, and if either of them acquired a title to the land, then the one so acquiring it was to give the other a deed for one-half part of such land. These articles were filed for record in the office of the probate clerk of said county on May 6, 1893.

In March, 1888, Martin filed in the office of the probate clerk of Bernalillo county a "notice of occupancy" so called, dated February 14, 1888, but which was unsigned and unacknowledged. This notice contained a description by survey of the land claimed by him, and a statement of the improvements made thereon by him, and which consisted of a house fourteen by twenty feet; a barn eight by twelve feet, and then continued,—"posts are set on all sides of the claim with two wires stretched on same except from corner number one to corner number eight and from corner number eight to corner number seven." This is a distance of 3,500 feet where no fence was built at the time of the filing of the notice.

The notice was filed under the provisions of what is now sec. 3753, Compiled Laws of 1897.

Martin returned the property for taxation and paid the taxes thereon for several years, but it was sold for the taxes of the year 1892. After Martin's death, the south one-half of southwest one-fourth of section twenty-one was assessed as the property of the "estate of W. J. Martin" for the year 1893, and under this assessment was sold to the appellant Johnston in the year 1894, and he received a tax-sale deed therefor in 1898. Appellant Johnston swears that he has paid the taxes on the land but copies of the tax receipts are not in the record.

In 1895, appellant Johnston received a quitclaim deed from certain persons claiming to be the heirs at law of John W. Martin, alias "Wesley J. Martin", for the south one-half of southwest one-fourth of section twenty-one. It is not claimed that these persons ever occupied the land deeded.

After the death of Martin, and prior to the summer of 1894, Johnston rented the house to one Brown, who lived there two months. In the summer of 1894, Johnston and his family lived there "pretty near a month." Between that time and the removal of the house from the premises in 1897, or 1898, the house was occupied by tenants of Johnston for the greater part of one summer, and by another man for two or three months. Before the removal of the house, the fence erected by Martin had practically disappeared. The wire had been stolen, and the posts had either been pulled out of the ground or chopped down and used for firewood.

After the removal of the house, there is no evidence that Johnston was on the ground until about Christmas, 1900, when he discovered that the city of Albuquerque had been hauling away dirt for some length of time. Thereafter he notified the mayor of that city to haul no more dirt from said land, but the mayor told him that he (Johnston) did not own the land, and the city has since continued to haul as needed.

The evidence disclosed that ever since Martin first went on the land it has been open to the public. That the town cattle passed through and grazed on it at will; that anyone who needed dirt had hauled it from the premises. That the land was put to no beneficial use by Martin or Johnston, save that part on which the house and barn stood, until the spring of 1901, when appellant Johnston leased a portion of the premises, to J. W. Freeman, to be used for brickmaking.

On April 29, 1901, Johnston demanded, under the act of Congress of 1901, above referred to, a deed from the mayor of the city of Albuquerque, for the south one-half of southwest one-fourth of section twenty-one, but that official declined to execute such instrument, on the ground that Johnston was not entitled thereto.

On July 8 of the same year, Johnston notified the proper authorities of the city of Albuquerque, not to remove any more dirt from the premises, but the city paying no attention to the notice, this suit was brought, a temporary injunction was denied, and the case came on for hearing on its merits, being tried by the judge. The judgment was given in favor of the city, without the appellees having introduced any evidence, and the cause was dismissed. From this judgment appellants prayed and were granted an appeal to this court.

The trial court made special findings of fact which support the judgment.

### OPINION OF THE COURT.

MILLS, C. J.—This is a suit brought by appellants to restrain the city of Albuquerque from trespassing upon and removing any soil, gravel, clay, or other substance, from the piece of land in controversy. The prayer of the complaint also asks that the title of the appellant, Johnston, to said land be established and quieted against the city of Albuquerque.

Previous to the passage of the act of Congress of

February 18, 1901, which act is entitled, "An act to confirm in trust to the city of Albuquerque, in the Territory of New Mexico, the town of Albuquerque grant, and for other purposes," the title to the land in question, which was within the limits of this grant, was in the United States, against whom the statute of limitations did not run. The act however quitclaimed to the city of Albuquerque said grant, in trust, for the benefit among others, "of all persons, claiming title to their individual holdings of real estate at the time of the acquisition of New Mexico under the treaty of Guadalupe Hidalgo and their successors in interest, or who have been in open adverse possession for the period of ten years prior to the passage of this act." There was but a single issue before the learned court below when the cause was tried, to-wit: Had Johnston been in open continuous, adverse possession of the land in question, for the period of ten years, at any time before the date of the bringing of this suit (July 30, 1901), so as to acquire a title to the premises by prescription?

We take it that under the act of Congress the "open adverse possession" necessary to acquire title by prescription to this land must be the same as would be required to have the statute run against the real estate owned by a private individual. Nothing appears in the act of Congress to lead us to presume that any distinction was intended to be made, or that any less strictness was required to acquire title to this land by adverse possession, simply because it was conveyed by the national government to the city of Albuquerque, in trust, than if it had been so conveyed to a private individual. Indeed, the use of the word "open" in the act, before the words "adverse possession," would seem to mean, if it means anything that the lawmaking power intended to add something to the possession required to obtain title by virtue of the statute of limitations, instead of taking anything away from it. Adverse possession of another's land, is such a possession as when accompanied by cer-

tain acts and circumstances, will vest title in the possessor. In all jurisdictions where the determination of what constituted adverse possession has arisen, the decisions and the textbooks are unanimous in declaring that the possession must be actual, visible, exclusive, hostile and continued during the time necessary to create a bar under a statute of limitations (1 Cyc. 981), which time is ten years in the case at bar, as set out in the act of Congress of 1901, supra. Section 2 of chapter 63, Session Laws of 1899, amends somewhat our statute of limitations, but the change is not material to the determination of this case.

That an adverse claim to land may ripen into a perfect title by virtue of the statutes of limitations, it is primarily essential that the possession relied on be actual. This has been passed upon by the courts of upwards of thirty of the States of the Union, as well as by the Federal courts. A collection of these cases can be found in 1 Cyc. 982.

Actual possession consists in exercising acts of dominion over it, and in making the ordinary use of it to which it is adapted, and in taking the profits of which it is susceptible. Webber v. Clark, 74 Cal. 11; Barstow v. Newman, 34 Cal. 90. The law sets out no particular rules where the statutes of limitations does not prescribe them, which are necessary to constitute acts of dominion. Actual possession is a question compounded of law and fact. Draper v. Short, 25 Mo. 197. Its determination must largely depend upon the situation of the parties, the size and extent of the land, and the purpose for which it is adapted. The only rule which is generally applicable is that the acts relied on to establish possession must always be as distinct as the character of the land reasonably admits of, and must be so exercised as to acquaint the owner, should he visit it, that a claim of ownership adverse to his title is being asserted. 1 Cyc. 985. Where adverse possession is sought to be shown by having the land fenced for the period prescribed by

the statute of limitations, such fence must be a real and substantial one (Bonel v. Rollins, 30 Cal. 408), and the land must be completely inclosed, either by natural objects or an artificial enclosure.  Goodwin v. McCabe, 75 Cal. 584; East Hampton v. Kirk, 84 N. Y. 215.   The building of a fence around land, and then allowing it in a short time to go to decay so that it will. not keep out live stock or trespassers, is not such a possession as will give title by reason of the statute of limitations.

By visible possession is meant, that the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible and notorious, as to give notice to the world that the right of the true owner is invaded intentionally, and with the purpose to assert a claim adversely to his.   1 Cyc. 997.

The possession must be exclusive, that is, that the person who claims the property by reason of the workings of the statute of limitations, or those under whom he claims, must have had exclusive possession of it. When the occupation is in common with the public generally, it is not such exclusive possession as will constitute the basis of a title by adverse possession.   1 Cyc. 1025.

The possession at its inception must be hostile or adverse to that of the true owner, or although not hostile at its commencement, such acts must be done, as to make it hostile, which must continue during the period of the running of the time of the statute of limitations.

In order to perfect a title by adverse possession, such possession must continue for the entire period prescribed by the statute of limitations.   Probst v. Presbyterian Church, 129 U. S. 190.   Any break or interruption of the continuity of the possession will be fatal to the claim of the party setting up title by adverse possession. 1 Cyc. 1000, and cases cited in note 48.   But temporary vacancies in the occupation, caused by the substitution of one tenant for another, which vacancies are not longer than is reasonable in view of the character of the

land, do not constitute interruptions of possession, such as would destroy the running of the statute. Hudgins v. Crow, 32 Ga. 367; Beasley v. Howell, 117 Ala. 499.

As heretofore stated this cause was tried by the court without the intervention of a jury, and the court made findings of facts, on which the judgment complained of was based. The findings appear to have been made principally at the suggestion of the attorney for the appellant, and no objection was made to them by the attorney for either party to this action at the time they were filed.

We do not think that the evidence shows that any of the five elements necessary to cause the statute of limitations to run were proved by the appellant on the trial below. Martin at first went on the land, believing it to be the property of the United States, as shown by his having filed the so-called "notice of possession" which however he did not sign, but which is introduced in evidence by the counsel for appellant. The only actual possession he had of the land was the small pieces on which the house and stable stood. The fence did not, when erected, enclose the entire tract of land, six hundred feet or more being at the very first left open; the fence was almost immediately allowed to go to decay, so that practically none of it remained. The land was for the greater part of the time used as a common pasturage for those who desired to graze their live stock thereon. After Martin moved away from the house in about the year 1892, it was occupied by appellant and his tenants for less than a year; its windows were boarded up, and finally it was moved away. During nearly all of the time since Martin first went on the land, those who desired to do so have gone on it and have taken dirt and other substance from it at their pleasure.

From a careful examination of the entire record, we are of the opinion that the findings of facts made by the learned judge who tried the case below, are amply sustained by the evidence, and that there is no error in the

judgment entered thereon. The judgment of the court below is therefore affirmed; and it is so ordered.

McFie and Parker, JJ., concur.

Baker, A. J., having tried the case below did not take part in this decision.