# MONTOYA AND UNKNOWN HEIRS OF VIGIL v. GONZALES.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 204. Argued January 27, 1914.—Decided February 24, 1914.

The disposition of this court is to leave decisions of the territorial court on questions of local procedure undisturbed.

The Supreme Court of the Territory of New Mexico having construed the statute permitting intervention in partition during the pendency of the suit as allowing an intervention after the judgment for partition and report of commissioners that actual partition could not be made, but before the final action of the court on such report, this court approves that construction. *Clark* v. *Roller*, 199 U. S. 541.

A statute of limitations may give title.

The evident purpose of the statute of New Mexico, giving title under a deed purporting to convey a fee simple after ten years to lands included in grants by Spain, Mexico or the United States, is to ripen disseisin into title and is not unconstitutional as taking property without due process of law.

Nor does such statute deny equal protection of the law by its classification of Spanish, Mexican and United States grants; such a classification in the Territory of New Mexico is a reasonable one to prevent the evil of attempts to revive stale claims in regard to such grants.

16 New Mexico, 349, affirmed.

THE facts, which involve the title to a Spanish grant of land in New Mexico and the construction and constitutionality of a statute of limitation of the Territory, are stated in the opinion.

*Mr. Alonzo B. McMillen* for appellants.

*Mr. George S. Klock*, with whom *Mr. Neill B. Field* was on the brief, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This action was begun on June 12, 1906, for the parti-tion, among the remote heirs of Juan Gonzales, of the Alameda Land. Grant, a Spanish grant of land in New Mexico, confirmed as perfect by the Court of Private Land Claims of the United States. On June 17, 1907, a judgment of partition was entered, declaring the persons named to be entitled to stated fractional undivided in-terests, and appointing commissioners to divide the land, or to report to the court if it could not be divided without prejudice to the owners. On July 3, 1907, the commis-sioners reported that partition could not be made, and before further action of the court, on July 20, 1907, the appellees asked leave to intervene in order to assert adverse interests. The application was allowed on No-vember 20, 1907, and the questions now before this court arise between these intervenors and heirs of Gonzales.—By way of parenthesis we will dispose of a preliminary objection at this point. It was argued that the decree of 'partition was a final decree and that the intervention came too late; but apart from the often stated disposition of this court to leave decisions upon matters of local procedure undisturbed, *Tiaco* v. *Forbes,* 228 U. S. 549, 558, the right to intervene was given by statute 'during the pendency of such suit' and the decision that the suit still was pend-ing was right. New Mex. Compiled Laws, 1897, § 3182, Acts of 1907, c. 107, sub-section 269. See further *Clark* v. *Roller,* 199 U. S. 541, 546.

The main questions concern the merits of the case. The greater part of the Alameda Grant it is found, has been occupied in strips, from beyond the memory of men now living. The intervenors claim such strips, most of them but a few yards wide, but extending, as they say, from the Rio Grande westward to the Ceja or ridge of Rio Puerco, a distance of some sixteen miles. They have

no documentary evidence of a title derived from Juan Gonzales, but they and their predecessors in title have occupied the bottom lands between the Rio Grande and the foothills to the west for more than ten years under deeds purporting to convey a fee simple in the respective strips to the ridge of Rio Puerco. The eastern part has been fenced, cultivated and built upon; but from the foothills to the Ceja of Rio Puerco the land is unfenced, and by a general custom has been used mainly for the grazing of cattle by the intervenors and others claiming ownership in the grant. The title to this last-mentioned land alone is in question now, and it will be seen that if the intervenors have the title they claim, it must have been gained by the lapse of time during which they have held what they have held under the above mentioned deeds. The judgment was in their favor in the courts below. 16 New Mex. 349.

The title of the intervenors does not depend upon the ordinary statute of limitations and some considerations that might be relevant under that statute are not relevant here. The title rests upon a peculiar statute that has been in force unchanged in any particular affecting this case, it is said, since 1858. Compiled Laws, 1865, c. 73, § 1. Compiled Laws, 1897, § 2937. By this act, possession for ten years, under a deed purporting to convey a fee simple, of any lands which have been granted by Spain, Mexico or the United States, gives a title in fee to the quantity of land specified in the deed, if during the ten years no claim by suit in law or equity effectually prosecuted shall have been set up. We state the statute according to its construction by the court below, with which, again, we should be slow to interfere, *Gray* v. *Taylor*, 227 U. S. 51, 57, and which also seems plainly right. The intervenors therefore are brought precisely within the words of the act, and we think it unnecessary to spend time on the suggestion that the appellants equally are within it, and

therefore, on the principle of cases such as *Hunnicutt* v. *Peyton,* 102 U. S. 333, are entitled to prevail on the strength of their older title so far as they were not actually excluded from the land. The purpose of the act is to ripen disseisin into title according to the deed under which the disseisor holds, and it is especially directed against ancient claims such as the appellants set up.

It only remains to consider whether there is anything in the Constitution of the United States to prevent the statute from doing its work. We limit our inquiry to its operation in the present case, and do not speculate as to whether other cases could be put in which the letter of some parts of the law could not be sustained. As applied to the intervenors, the statute simply enacts that possession for ten years of the front and cultivable portion of a strip under a deed carrying the whole of it back to the ridge of the Puerco, shall give title to the whole. We can see no taking of property without due process of law in this. A statute of limitation may give title. *Toltec Ranch Co.* v. *Cook,* 191 U. S. 532. *Davis* v. *Mills,* 194 U. S. 451, 456, 457. *United States* v. *Chandler-Dunbar Water Power Co.,* 209 U. S. 447. The disseisee has notice of the law and of the fact that he is dispossessed, and that a deed to the disseisor may purport to convey more than is fenced in. If he chooses to wait ten years without bringing suit, he is not in a position to complain of the consequences— at least, not when, as in the present case, the deeds do not purport to convey more than a reasonable man probably would have anticipated. See *Soper* v. *Lawrence Brothers Co.,* 201 U. S. 359, 367, 368. For we should conjecture, if it were material, that in this case the deeds under which the intervenors held were in a form that was usual and expected in that place.

The statute does not deny the equal protection of the laws, even if it should be confined to Spanish and Mexican grants. For there very well may have been grounds for

the discrimination in the history of those grants and the greater probability of an attempt to revive stale claims, as is explained by the Supreme Court of New Mexico. There is no other matter that we think proper for reconsideration here.

*Judgment affirmed.*